Thank you, Judge. The fifth and final case this morning, 20-2028. Vote Solar v. City of Farmington. Counsel, we're ready to hear you. Good morning, Your Honors. May it please the Court, my name is David Bender for Plaintiff Appellants. I'll try to reserve three minutes of my time for rebuttal. Ultimately, the question before the Court in this case comes down to whether it is violate a federal law and yet implement that law. The District Court's decision in this case assumes that it is. However, the plain meaning, plain dictionary meaning of the word implement and every prior judicial decision and FERC order on this topic says otherwise. Implementing... Well, FERC does too, right? That's correct. Every court and numerous FERC orders all say that the requirement to implement FERC's rules includes, incorporates both a procedural step one must take and that that step has to actually fit within the four corners of the requirements in FERC's rules. Fundamental flaw in the District Court's reasoning in this case was its false premise that when Congress provided state and federal courts with jurisdiction over implementation of FERC's rules, Congress intended to bifurcate the procedural piece from the substantive piece. And in applying that false premise, the District Court's decision reached a counterintuitive conclusion that Congress gave exclusive authority to state courts to determine what FERC's rules mean and whether they are complied with in substance and to relegate to the federal courts and to FERC itself, a question policing procedures that happen at the state level. Applying a plain language meaning of what Congress actually said in the relevant statutes and consistent with every other court decision and with FERC's court to reject the lower court's premise and reverse. I'd like to briefly discuss how we got here today. The underlying statute PURPA, Public Utility Regulatory Policies Act was enacted to encourage utility customers to generate some of their own electricity with renewable resources as an alternative to utility generated electricity. Technology advances since PURPA was first enacted now allow utility customers, residential customers, small businesses to install cost-effective solar panels on their roofs to offset some of the electricity they'd otherwise purchased from the utility. Foreseeing that utilities would attempt to undermine that type of competition to their monopoly and the fact that state regulators at least occasionally would be ordered FERC to adopt rules prohibiting discriminatory rates for customers like customers with solar panels and requiring utilities sell electricity to customers with solar panels at non-discriminatory rates. And then to ensure that those rules have teeth, Congress gave FERC the authority to enforce, to compel states and unregulated utilities to comply and Congress authorized utility customers such as my clients in this case who have generation to file their own action in district court when FERC fails to act. City of Farmington is not regulated by a state-level public utility commission. Instead the city sets its own rates through city council ordinance. So the city council's full extent to which Farmington purports to implement FERC's rules. 2017, Farmington imposed discriminatory charges on customers with solar panels. Plaintiffs, 10 individuals. Let me stop you there for a minute. Go ahead, Judge Luttrell. That's all right, Judge Carson. I was just going to say that you said in 2017 something I didn't what you said. So the rate is... No, no, no. In 2017, I was up with you up to that point. I didn't hear what you said. In 2017, the city of Farmington imposed the rates that discriminate against customers with solar panels. Thank you. Excuse me, Judge Carson. Okay. So the word discriminates against customers. That's sort of a legal term of art, right? Because I'm wondering, it seems to me, the base case here is that you don't like the rates. I think it's more than that, Judge. It's not that we don't like the rates. The rates charge more intentionally, are targeted to charge more specifically to those customers who have their own generation. Okay. Now, is it ever appropriate in your worldview for a utility or to charge more to someone who's not consistently on the grid and who generates most of their own power? Is that ever okay? So my worldview aside, FERC's rules say there's a narrow exception, right? So the FERC rules and in the preamble that created them said the assumption is that you charge customers with solar panels the same price for that kilowatt of electricity that you charge the neighbor without solar panels. There's an exception, which requires the utility to walk through a series of steps, which is do some evidence gathering that has to show that there's a real difference. You have to apply the same essentially cost of service and pricing policies as you design, and you have to make sure that whatever falls out of that would apply equally to another customer with the same usage characteristics, regardless of whether they have the solar panel. If I may intervene, Judge Carson, to ask a couple of questions, please. I'm not sure I totally follow what you mean charge more. Let me just understand what you're and you are charging, and we're not on demand meters, we are on a regular meter, and we are paying eight cents per kilowatt hour. All right, you follow me so far? I follow so far. We're both paying the same rate. Now Judge Carson gets fancy and he buys a solar panel, and he is going to get credits for the power that the solar panel generates, correct? Not always. Well, if the sun doesn't shine, he's not going to get credits, but I mean, assuming the panel is generating credits, generating power, he theoretically will get credits against his payments for the power he utilized, correct? Not so. I guess I don't understand this case because I thought that the issue was whether Judge Carson would be charged more than eight cents for the kilowatt hour that he uses uh it's merely because he is uh enabling credits to come from his uh happy sunshine solar panel uh and that is not you told me that's that my understanding is incorrect. So the the analogy would be uh if if you and Judge Carson both use one kilowatt of electricity um under Farmington's rates, you would each be charged eight cents right for that kilowatt hour, but if Judge Carson has a solar panel, the utility would also slap another charge on his bill for the privilege of having and buying his own and installing his own solar panel. Well, and I think what Judge Lucero's getting out getting to is whether that difference is offset by the net metering when Judge Carson's generating his own power from his solar panels and as I understand the net metering, he's getting some credit for that. Is that somehow offset? I think that's what Judge Lucero was asking. Is there an offset against the extra penny per kilowatt in the hypothetical? Thank you, Judge McHugh. I was, yes, the question is whether that has the effect of creating a differential rate as between what Judge Carson is paying and what I'm paying. So that the the rate the utility determines what the rate applies to. So let me back up the the choice of net metering is not proscribed by federal law. So that's a choice that states make on their own and operates like this. You can define a sale of a kilowatt hour based on a time period and what net metering says is we'll run your meter for the month and I'll spin forwards and I'll spin backwards and we'll determine the net your the amount of electricity you are receiving as service at the end of the month. Right, but you get credit for, so I have solar panels on my home, you get credit when you are pushing out electricity from your solar panels against the bill for when you're taking electricity from the utility. Is that correct? In some net metering scenarios depending on the state law or the local law at issue. Okay, well how about this? I have my own solar panels on my roof and I'm pushing power out into the system and you're having to buy it from me. The ultimate effect is that I'm going to pay you out of my pocket less over time because you're having to buy electricity for me when I'm not using it all and sometimes I'm actually buying electricity from you. Correct. Okay, so I think that gets us to where we are what Judge Lucero was talking about. Well yeah, well meanwhile Judge Lucero, the energy hog, keeps happily turning on all his power and TVs and electric radiant heating and I just keep paying eight cents an hour. What's your squawk? I don't understand. I mean in simple terms tell me what's the problem here? Well, let me back up. In simple terms the problem here is... Instead of telling me what the problem is you want to back up. Just tell me what the problem is. The problem in the complaint is regardless of whether you push any electricity out to the grid or not or whether you consume all of it behind your own meter, you have to pay the utility. Who is you? Carson or me? Judge Carson in your hypothetical. The customer with the solar panel has to pay the utility for the privilege of having that solar panel regardless of how much electricity you use and regardless of whether you, Judge Carson... So what you're telling me is that Farmington is charging a flat fee to Judge Carson for placing a solar panel on his roof. That is exactly what they are doing. That's in addition to the any flat fees that they charge to the non-solar customer. Now why does that violate FERC and then I'll turn it back to you. That is an additional charge that no matter what amount of electricity you inflow that you get a bill for. You're going to have your flat charge for your solar panel. You're saying that that practice violates FERC? That violates FERC's rule and it violates Congress's instruction not to discriminate. Where's the language that it violates? Please be simple for me because I'm not as swift as my colleagues. There are two 18 CFR 292 303 B. Each electric utility shall sell to any qualifying facility which includes customer solar panels in accordance with 305. You go to 305 and it says that rate shall not discriminate and then it has the exception that we talked about earlier. So you're saying that precludes charging a flat fee for the privilege of having a panel on your roof? Right because the result of the flat fee is no matter how much you use because of that additional charge you're paying more for your electricity. I understand that but your argument to us is that FERC prohibits charging a fee or flat fee in any event for the privilege of having a solar panel on your roof. What I'm saying is the FERC rule prohibits a rate that charges a customer with the solar panel more for the electricity that they do receive as compared to the customer. That it seems to me is the effect but all right I think enough. I'm going to extend additional time because of my questions but Judge McHugh you had a question. Well turning getting this back to what we're here on which is jurisdiction. As I understand your position whether or not the rule adopted by Farmington is discriminatory therefore violating the FERC rules is a federal question and under 210 H2B there's jurisdiction to review whether it was properly implemented in federal court. Is that a correct statement of your opinion? You may not have heard me but I said I was going to extend additional time. Go ahead. Thank you your honor. That is in effect plaintiff's argument here that the statute providing federal jurisdiction a federal cause of action 210 H2B allows the federal court to enforce the requirements of 210 F and there are and I think your argument is that Judge Parker's interpretation creates a circuit split in which we would be the lone ranger. Yes it does create a circuit split with the first second fifth ninth eleventh in the DC circuit on the other side of the split. Thank you. We'll hear from your colleague here and then we'll come back to you. Thank you. Hello may it please the court. I am Kristen Connelly McCullough appearing on behalf of Appalee the city of Farmington, New Mexico. The only issue on appeal in this case is jurisdiction. It is not whether there can be simultaneous violations of an implementation or the substance of the statute. I agree I agree with McCullough but it sometimes it's really helpful to understand the underlying operation and factual operation in order to place the issue in context in my defense. Yes I agree. The district court here found that there is a venue for the claims alleged by appellant plaintiffs. It just is not in federal court. But isn't that just contrary to 2010 H2B. I mean there's overlapping jurisdiction under the statute and under 2210 H2B you have a federal forum when you're challenging the implementation of the FERC requirements and you're bringing the action against a utility or qualified facility and you are a state regulatory authority or a non-regulated utility. Isn't that what we fall under here? They can bring this action in federal court under the plain language of the statute can't they? No I don't believe that they can your honor. And your argument is the reason they can't is because implementation means nothing more than they went through the motions to adopt something no matter how far that something is from what FERC requires. Not exactly. So appellant plaintiffs claim here requires a fact-based post-implementation inquiry into how the substantive requirements of purple were met. It necessarily questions the data, the assumptions, the calculations, policies, and rate design used by a non-regulated electric utility in developing and adopting its rates for qualifying facilities. Our review which is consistent with Judge Parker's review in the district court is that you need to follow the language of the statute. And the language of the statute if you walk through it section 210-f provides for the procedural aspects and the implementation. Section 210-a, b, and c are the substantive requirements wherein purple first requires FERC to prescribe rules for the encouragement of small power production and where FERC's prescribed rules under a provide for just and reasonable in the public interest and not discriminatory rates for purchases to and from the qualifying facilities from electric utilities. So through subsections a through c of 210 FERC establishes the general guidelines for developing qualifying facility rates but it does not set the rates itself. And if you look at section 210-g that including the U.S. Court of Appeals for the D.C. Circuit in Portland General Electric, purple relies on state adjudication as its mainstay for enforcing purple rates. It does but not its only. Not its only. So there's more jurisdiction in the state courts under 210-g1 and 210-g2 but there's also jurisdiction in the federal courts. And what you are saying is that it's the purview under the statute for the state court to have the final word in what the FERC rules the federal rules require. And that just seems to turn it on my head and no other is seen it that way. So yes. Our interpretation of the limited federal jurisdiction described in section 210-h is very limited. 210-g is very broad and it cross references section 2633 which presumes the state court adjudication. Section 210-h explains under h1 it's when FERC has exclusive jurisdiction and that's when the purple rules regard any operations of an electric utility or qualifying facility that falls squarely within FERC's exclusive jurisdiction under the FERC is authorized to institute an enforcement action at its discretion if a state regulatory authority or non-regulated electric utility fails to implement FERC's rules. The section notes no other action may be brought by FERC except what's explained in h1 and h2. So it's all about the word implement. It's not necessarily all about the word implement. The supreme court has interpreted section 210-h and its enforcement authority and has described that a state or non-regulated electric utility implements by doing one of three things. By case-by-case adjudication, instituting a statewide rule or any means reasonably close to getting the implementation and that's what's going on here. The interpretation in FERC v. Mississippi also described the requirements under section 210-f which are what is being enforced under 210-h2 as being procedural and only procedural and contrasted that with the other sections of the statute. In response, FERC issued a policy statement in 1983 to that supreme court case and adopted and clarified those three ways that states can implement and meet the implementation requirement under section 210-f. Under what the district court did and under your argument, it seems to me that all the state has to do is make a good faith effort to incorporate the FERC rule rather than to act consistent with the rule. And that is that I disagree with you only insofar as section 210-g is where enforcement with respect to the substance of the rule comes into play. Under section 210-h, we're limited to a procedural inquisition. And where do you get that you're limited to only whether they went to the motions of adopting something, whatever it might be? So section 210-f explains that it would be implemented after notice and opportunity for a public hearing. And then the interpretation by the supreme court and by FERC shortly thereafter explain that that procedural limitation is appropriate. In that 1983 policy statement by FERC, they specifically... FERC disagrees with your position on jurisdiction, right? In that 1983 policy statement, FERC explicitly addressed what it interpreted as its role in the statute. And in fact, they said that the enforcements under section 210-h are procedural and gave an explicit example of what it would be to violate the implementation obligation under section 210-f. And it would be if a state or non-regulated electric utility failed to provide notice or an opportunity for public hearing as required under section 210-f. And they said, even all other procedural challenges would be directly addressed in the proper judicial forum, not FERC. So those are the only procedural challenges that FERC interpreted within its section 210-h and section 210-f. Do you agree if we accepted your position, we would be creating a circuit split? I agree that there will be a circuit split, but I think that one already exists. The cases relied upon that are cited to the DC Circuit Court of Appeals are all taken out of context. Each one of those did not address the jurisdictional issues here. Those addressed, whether or not the FERPA enforcement scheme allowed for direct challenges to FERC declaratory orders on the FERPA to go directly to the Court of Appeals and bypass the district court. And they found that no, section 210-h claims must go to the district court in the first instance. So those references are taken out of context to rely on the DC Circuit. The Fifth Circuit and specifically Power Resource Group case, in my opinion, is the first case that actually grappled with this jurisdictional issue after FERC versus Mississippi, the Supreme Court case. I think Judge Lucero dropped off. And so I'm wondering, Judge McHugh, if we should give him a minute to jump back on. Yeah. Paul, can you see if he's on? Judges, it looks like he's there. He's just muted himself and taking himself off camera. Okay. Sorry. Go ahead. Go ahead. Okay. So Power Resources Group, that court grappled with this specific decision. They recognized that the Supreme Court said that an implementation challenge could be limited, and that was a reasonable interpretation, could be limited to the procedural aspects. But Power Resource Group said that they wanted to get to the underlying substance as well, because it was not... All of the discretion and the wide latitude that FERC recognized was given to the states under PURPA did not allow for them to essentially cherry pick what it would, in fact, enforce. And for that reason, that was the first case to actually go into not just the procedural aspects, but expanding the in determining whether it's implemented, it is appropriate to look at whether it was properly or meaningfully implemented. That's right. And the problem with following that decision, I think, is aptly demonstrated by the subsequent case with... Excuse me. By the subsequent case and in the Fifth Circuit. Counsel, do you distinguish in any way the difference between the word implement and promulgate? In terms of the statute or in the context of the statute... In terms of the context of 210H and F, F states, the utilities shall, after notice and opportunity for public hearing, implement FERC rules, not promulgate any rules. And I'm just asking whether... Because under the Administrative Procedure Act, the word after notice and hearing is typically followed by promulgate, not implement. There's a difference between promulgating rules and implementing rules. Correct? I think it depends on the context, but I agree with generally that there might be a difference between those two. I think the concern in following the... What the district court here properly characterized as the wrong question, which is in the inquiry, whether it's an implementation versus as applies challenge, the courts are necessarily relying upon whether the claim affects petitioners discreetly or categorically. And it's really difficult to implement that. In Exelon Wind and the Fifth Circuit, relying on that power resource case, Exelon Wind, the district court found jurisdiction to hear claims because there was a broad ruling issued in the state order. However, on appeal in the Fifth Circuit, they said that orders were to be treated as applying the rules to the individual petitioners and overturned the district court for the same reasoning in order to find that the order was an as applied challenge and fell out and had to be dismissed for lack of subject matter jurisdiction. Just because it's an order with broad... Affecting a broad category of plaintiffs, it was still an order being challenged as applied. And with the Fifth Circuit's evolution, the application versus implementation test has turned into an order versus rule test. And notably, there are courts that did not follow that. The Winding Creek case in the Ninth Circuit found that there was federal jurisdiction over orders limiting qualifying facility rights, which means that they still viewed the orders that the Fifth Circuit would have said as applied challenges. They still viewed the orders of broad applicability as subject to the Fifth Circuit's rule test. And so, the Winding Creek case also found that there would be federal jurisdiction over a review of an order. And so, there's already a circuit split. This test, the implementation as applied cannot be applied easily. The test that we outline follows the and would alleviate the opening the floodgates into federal court. I see I am out of time. And so, for the foregoing reasons, I respectfully request that the court find in favor of aptly affirm the opinion of the district court and deny the appeal. Thank you, counsel. And I had indicated because there were questions that I would grant additional time to your colleague. Why don't you add a minute and a half, make that two minutes total for counsel, and we'll try not to interrupt you to see if we can give you time to finish your argument. I have a question for him. Oh, well, I'll tell you what, why don't we have two minutes plus the questions from Judge? Okay, I'll let him go first, then I'll ask my question. I'll try to be brief. I would invite the court to read the Mississippi versus FERC case and the power resources case and the 1983 policy statement by FERC because I would submit to the court that none of those support counsel's interpretation that 210H is limited to procedural steps. In fact, I'd point specifically to the 1983 policy statement, which is in appendix volume two at page 80, where FERC says under 210F, the state authorities and non-regulated utilities are required to implement. And it says under a section 210H2, 2A, the commission has the authority to require commencement under subsection F, then the very next sentence says, moreover, the commission's authority under this subsection extends to situations where the state regulatory authorities or non-regulated electric utilities are alleged to have completed the implementation process, but have promulgated regulations which are inconsistent with or contrary to the commission's regulations. So what FERC actually said was that a case just like this one, where there was an action, but the action violates the substance of first rules, that is a 210F violation actionable under 210H. Of course, we don't give Chevron deference to that, do we? Not to the policy statement, but the court can give Chevron deference to the declaratory orders by FERC, which adopt the same Cedar Creek being one, Rainbow something, FERC order being another, which apply the same interpretation, in fact, cite it, and those are due Chevron deference. Sorry, Judge Lucero. That's all right. We're good. Judge Carson had a question. Okay, so under the Lucero rule, we're allowed, Judge Carson is allowed to ask questions, but if they exceed five minutes, the gavel comes down. I hope it's not going to. Okay, so your complaint here is that the city of Farmington basically engaged in a discriminatory charge for small power producers who have solar, and I guess in implementing the rule required by the statute, the city of Farmington had to consider two things. One of them was whether the rates were just unreasonable. That's one of the things they had to be working on, right? That is an additional criteria in addition to the non-discriminatory. Right, but yes, no, I agree, and then the next thing they had to do was they had to consider whether or not they were discriminatory. And so, at bottom, I mean, had they come up with, had they gone through this process and not decided to ding your clients with a surcharge or whatever you want to call it, we wouldn't be here. Right, I mean, if there was no discriminatory rate, we wouldn't be here. I mean, and their position is, well, it's not discriminatory. We calculated that. That was part of the calculation to determine that the rates were fair and reasonable and that they paid for their fair share of the infrastructure and all these different things. And it seems to me that you have a rate case at bottom here. I mean, you're not suggesting that it's the federal court's job to police all the rates, are you? I mean, that's a state function under the statute. Well, it's definitely the state function in the first instance to set the rates, and I agree with that. And we only arrive at the federal court if the result is, I mean, the FERC rule is thou shalt not discriminate, right? And so, and it says, it adds color to it in the preamble, and we can go to the preamble and go through, like, what does that mean in practice? And, you know, I would just submit that's the merits, and I'm happy to get to the merits. We want to get to the merits. The question here is, can we get to the merits? Is that properly before the federal court? With Judge Carson's permission, I think we'll close it there with you making an effort to get to the merits. Yeah, I'm all finished. I don't want to get to the merits. All right. I think if I can summarize the argument is if Judge Carson asks me to jump off a bridge or orders me to jump off a bridge, I either have to make a good faith effort to find the bridge, or if I'm to implement it, I have to jump off the bridge, one or the other. I don't know. That's the case in any event, and we will stand submitted. Counselor excused. Thank you.